RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID LYNN BUIE,

*Defendant-Appellant.*

No. 18-6185

_____

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 1:17-cr-00011-1—Aleta Arthur Trauger, District Judge.

Argued:  August 9, 2019

Decided and Filed:  May 29, 2020

Before:  CLAY, LARSEN, and READLER, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:**  Michael C. Holley, FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant.  Cecil W. VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.  **ON BRIEF:**  Michael C. Holley, Ronald C. Small, FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant.  Cecil W. VanDevender, Robert E. McGuire, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

CHAD A. READLER, Circuit Judge.  David Lynn Buie challenges his 180-month sentence for felonious possession of a firearm as enhanced by the Armed Career Criminal Act, or

ACCA.  Buie's criminal history includes a host of Tennessee convictions.  Buie understandably concedes that his manslaughter offense qualifies as a "violent felony" for purposes of an ACCA sentencing enhancement, but he contends that neither his aggravated burglary nor arson offenses do.  Our precedent forecloses Buie's argument as to aggravated burglary.  *See Brumbach v. United States*, 929 F.3d 791 (6th Cir. 2019).  Today, we reach the same conclusion as to his arson conviction.  It too is an ACCA predicate.  Adding all of this together, Buie has committed three violent felonies under ACCA, the trigger for a sentencing enhancement.  We thus **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

While pursuing an outstanding search warrant for Buie, officers of the Columbia, Tennessee Police Department learned that Buie had recently pawned firearms at separate shops.  Viewing surveillance footage from those shops, police saw Buie in possession of a .30-06 rifle and a 12-gauge shotgun, each of which he then exchanged for money.  In additional surveillance footage, police saw Buie again pawn two firearms for money, this time a .22 caliber rifle and another 12-gauge shotgun.  Based on this evidence and Buie's lengthy criminal history, federal law enforcement officials indicted Buie on two counts of felonious possession of a firearm.  Buie pleaded guilty to both counts.

The ensuing presentence report recommended an enhanced sentence after finding that five of Buie's past Tennessee convictions qualified as violent felonies under ACCA:  second-degree burglary, arson, voluntary manslaughter, and two counts of aggravated burglary.  Buie conceded only that his voluntary manslaughter conviction so qualified.  He argued that his aggravated burglary convictions under Tenn. Code Ann. § 39-14-403 were not violent felonies under our decision in *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (en banc).  The district court agreed and excluded those convictions from the tally.  Buie also argued that his arson and second-degree burglary convictions were not ACCA predicates because Tennessee's definitions of those crimes were broader than their common law counterparts—second-degree burglary on the entry element, and arson on the *mens rea* and act elements.  The district court disagreed and deemed both convictions to be violent felonies under ACCA.

Adding those two convictions to the voluntary manslaughter conviction, the district court found that Buie qualified as an armed career criminal and was subject to the mandatory minimum 180-month sentence imposed by ACCA. The district court then imposed a sentence of 180 months on each count of felonious possession, running concurrently. Buie appealed.

Not long thereafter, the governing caselaw backdrop changed. And that turn of events was not helpful to Buie's cause. The Supreme Court reversed our decision in *Stitt*, holding that the locational element of aggravated burglary under Tenn. Code Ann. § 39-14-403 corresponded with generic burglary. *United States v. Stitt*, 139 S. Ct. 399, 406 (2018). That brought Buie's aggravated burglary convictions back into play, for purposes of ACCA. Shifting gears, Buie now argues that the *entry* element of his various burglary convictions is overbroad. And he continues to argue that his arson conviction is overbroad on its *mens rea* and act elements. It follows, says Buie, that only his conviction for voluntary manslaughter qualifies as a violent felony under ACCA, meaning his 180-month sentence is invalid.

## II.  ANALYSIS

As relevant here, to qualify for an enhanced sentence under ACCA, a criminal defendant must have committed three violent felonies. 18 U.S.C. § 924(e)(1). Under the Act, "[t]he term 'violent felony' means":

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that—
>
> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> **(ii)** is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B). We review de novo whether an offense qualifies as a "violent felony" for purposes of ACCA. *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016).

The parties have helped narrow our statutory inquiry. Buie does not dispute the threshold requirement that each of his felony offenses was punishable by imprisonment for a year or more. And the government, for its part, says the felonies in question satisfy only subsection (ii), meaning we need not consider subsection (i). It likewise acknowledges that the latter clause in

subsection (ii)—that an offense "otherwise involves conduct that presents a serious potential risk of physical injury to another"—was invalidated by the Supreme Court as unconstitutionally vague. *See Johnson v. United States*, 135 S. Ct. 2551 (2015).

We thus consider whether Buie's convictions correspond with the crimes listed in subsection (ii)'s enumerated offenses clause: "burglary, arson, [] extortion, [or] involves the use of explosives." 18 U.S.C. § 924(e)(2)(B)(ii). Although both burglary and arson rather conspicuously appear on that list, that does not end our inquiry. For the label the state attaches to a crime is not determinative. Rather, we must compare the elements of Tennessee burglary and arson with those of the "generic" versions of those crimes. *See Taylor v. United States*, 495 U.S. 575, 598 (1990). We are thus guided not by Buie's actual conduct, but instead by the minimum conduct that could result in a conviction under those Tennessee statutes. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013). To determine the statutes' outer contours, we undertake the now-familiar step of consulting both their text and decisions of the Tennessee Supreme Court interpreting the statutes. *Cradler v. United States*, 891 F.3d 659, 669 (6th Cir. 2018) (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010)).

*Precedent Forecloses Buie's Argument Regarding Aggravated Burglary.* Starting with Buie's burglary convictions, the record reflects three, two that appear to be aggravated burglary, and one for second-degree burglary. Because it will not impact Buie's sentence, we leave for another day any unanswered questions regarding whether a Tennessee second-degree burglary conviction qualifies as a violent felony. *See United States v. Jones*, 673 F.3d 497, 505 (6th Cir. 2012) (examining Tennessee second-degree burglary's locational element and concluding the offense is an ACCA predicate); *Kitts v. United States*, -- F. App'x --, 2020 WL 2211775, at *4 (6th Cir. May 7, 2020) (remanding for consideration as to whether Tennessee second-degree burglary is an ACCA predicate in the aftermath of *Cradler*, 891 F.3d at 671).

1. As to Buie's aggravated burglary convictions, we start with two housekeeping matters. First, the crime listed on the underlying state court judgment was "Burglary—1st Degree." But that crime did not exist in Tennessee in 2001, and those convictions were designated as class-C felonies, which might suggest they were something short of aggravated burglary. The district court, however, determined that these convictions were actually for aggravated burglary under

Tenn. Code Ann. § 39-14-403(a), and the parties do not dispute this finding. *United States v. Buie*, No. 1:17-cr-00011, 2018 WL 5619335, at *2 (M.D. Tenn. Oct. 30, 2018). Second, the district court found that the government had not met its burden to prove that Buie's two convictions for aggravated burglary occurred on different occasions. *Id.* at *11–12 (citing 18 U.S.C. 924(e)(1)). Although the corrected judgments for Buie's convictions suggest that the crimes may have been committed a month apart, there is no evidence that Buie ratified these dates in his plea colloquy; no transcript of the proceeding could be recovered, and the audio recording is poor and indecipherable. *Id.* at *12 n.6. Because it is immaterial to the outcome of Buie's appeal, we assume without deciding that Buie has only one conviction for aggravated burglary.

2. That conviction, however, qualifies as an ACCA predicate offense. Buie contends it does not, on the ground that a defendant can be convicted of aggravated burglary under Tennessee law by engaging in entry by instrument, conduct that would be considered merely attempted burglary in most states. But his argument is both foreclosed by precedent (under *Brumbach*, 929 F.3d at 795), and meritless (under *United States v. Brown*, 957 F.3d 679, 683–89 (6th Cir. 2020)).

*Buie's Arson Conviction Is Also A "Violent Felony."* Buie was convicted of arson under a now-defunct Tennessee statute that criminalized both arson and aiding and abetting arson:

> Any person who willfully and maliciously sets fire to or burns, causes to be burned, or who aids, counsels or procures the burning of any house or outhouse, or any building, or any other structure, the property of himself or of another, shall be guilty of arson and shall be punished for not less than three (3) years nor more than twenty-one (21) years.

Tenn. Code Ann. § 39-3-202 (1982) (repealed).

1. Buie argues that § 39-3-202 is indivisible as a matter of Tennessee law and, as a result, the categorical approach bars us from considering whether he burned a structure ("sets fire to or burns, causes to be burned"), or instead merely aided and abetted the burning ("aids, counsels or procures the burning"). *See Descamps v. United States*, 570 U.S. 254 (2013). We agree.

A criminal statute is divisible for purposes of the categorical approach when it is alternatively phrased in such a way that it lays out multiple distinct crimes. *See United States v. Ritchey*, 840 F.3d 310, 318 (6th Cir. 2016). Paradigmatic examples of divisible statutes are those that lay out basic elements of a crime and then describe different variations in conduct that lead to a charge for a greater offense. Take an arson statute that criminalizes the burning of a structure. Suppose it contains alternative clauses which provide that if the structure burned is a habitation, it is first-degree arson, punishable by ten years, but if the structure burned is not a habitation, it is second-degree arson, punishable by five years' imprisonment. Such a statute, with its different punishments, is clearly divisible. *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

These indicia of divisibility are absent here. There is no evidence that Tennessee considers personally burning a structure to be a different crime from aiding and abetting the burning. Start with the text. It treats one who "sets fire to or burns, causes to be burned" a structure the same way as one who "aids, counsels or procures the burning" of a structure: each is "guilty of arson and shall be punished for not less than three (3) years nor more than twenty-one (21) years." *See* Tenn. Code Ann. § 39-3-202. By punishing both acts in the same way, the statute's text provides a clue suggesting that burning a structure—either by one's own act or through procurement—are the same crime. Just as different punishments are conclusive evidence of divisibility, identical punishments can suggest that a statute describes a single crime, not multiple ones. *See United States v. Morris*, 885 F.3d 405, 410 (6th Cir. 2018). Tennessee case law confirms this indivisibility conclusion. *See State v. Thompson*, 549 S.W.2d 943, 944 (Tenn. 1977) (treating arson and procuring arson as one crime).

2. Because § 39-3-202 is indivisible and criminalizes aiding and abetting the burning of a structure, we must assume that Buie was convicted of aiding and abetting arson, the minimum conduct criminalized by the statute. *See Moncrieffe*, 569 U.S. at 190–91 (instructing courts to focus on the minimum conduct criminalized by an indivisible statute in performing the categorical analysis). Comparing that "minimum conduct" to the general understanding of what constitutes arson, Buie claims that § 39-3-202 criminalizes more conduct than generic arson, meaning his offense is not an ACCA predicate. *See, e.g.*, *United States v. Gatson*, 776 F.3d 405,

410 (6th Cir. 2015) (holding that an Ohio statute criminalizing "knowingly caus[ing] or creat[ing] a substantial risk of physical harm to property without the victim's consent" by "means of fire or explosion" matched generic arson).

But Buie's argument confronts a hard reality. In every American jurisdiction, to our knowledge, principals and those who aid and abet them are held to have committed the same crime, and are punished in kind. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189–90 (2007) (citing 2 W. LaFave, *Substantive Criminal Law* § 13.1(e) (2d ed. 2003)). We recognized as much in the ACCA context in our recent decision in *United States v. Richardson*, 948 F.3d 733, 741–42 (6th Cir. 2020) (holding that aiding and abetting Hobbs Act Robbery is a violent felony for ACCA purposes). The defendant there had previously been convicted of aiding and abetting Hobbs Act Robbery. *Id.* at 741. Acknowledging precedent holding that Hobbs Act Robbery itself was an ACCA predicate, the defendant argued that merely aiding and abetting that offense was not a predicate. *Id.* In rejecting that argument, we emphasized a bedrock principle of criminal law frequently employed by this Court and others: "[O]ne who causes another to commit an unlawful act is as guilty of the substantive offense as the one who actually commits the act." *Id.* at 742 (alteration in original) (quoting *United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002)). Aiding and abetting arson is no different. The Tennessee arson statute's act element thus corresponds with generic arson.

3. Alternatively, Buie makes an interpretive argument that § 39-3-202 should be read to mean his arson conviction is not a violent felony. The reason? Because, says Buie, the aiding and abetting theory of arson under the statute does not require a showing of willfulness or malice.

Buie reads the *mens rea* of willfulness and malice as applicable to one who "sets fire to or burns, causes to be burned" but inapplicable to one who instead "aids, counsels or procures the burning." But the latter immediately follows the former. *See* Tenn. Code Ann. § 39-3-202 ("Any person who willfully and maliciously sets fire to or burns, causes to be burned, or who aids, counsels or procures the burning of any house . . . ."). As the district court recognized, Buie's interpretation is an unusual way to read the statute. The statute's language employs a straightforward, parallel construction that lists several verbs in a series. "Willfully and

maliciously" are two adverb modifiers appearing at the beginning of the list, which ordinarily are deemed to modify the entire list. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012). Buie provides no textual basis to depart from this straightforward of reading the statute, and we thus decline to do so.

*United States v. Webb*, 217 F. Supp. 3d 381, 399 (D. Mass. 2016), does not change our conclusion. Yes, *Webb* concluded that a similarly worded Massachusetts arson statute was overbroad for purposes of ACCA. But that conclusion turned on the court's understanding that "Massachusetts does not necessarily require the prosecution to prove that the defendant had any state of mind with respect to the actual burning." *Id.* (construing *Commonwealth v. DeCicco*, 688 N.E.2d 1010, 1015 (Mass. App. 1998)). Yet a fair reading of *DeCicco* undermines that understanding. As *DeCicco* explained, "[t]he assistance has to be purposeful. The person must know they are aiding, counseling, assisting, or advising the other person with respect to the burning of a building." 688 N.E.2d at 1015. And even if *Webb* were correct that Massachusetts did not require proof of any *mens rea* with respect to aiding and abetting arson, that is not the case under Tennessee law. *See Thompson*, 549 S.W.2d at 944 (examining whether the defendant "willfully and maliciously" counseled and procured the burning of a building).

4. Nor do we accept Buie's argument that knowledge alone is insufficient to satisfy the accepted mental state for committing generic arson. Buie cites our decision in *Gatson*, 776 F.3d at 410. True, *Gatson* observed in passing that "generic arson embraces 'the intentional or malicious burning of any property.'" *Id.* (quoting *United States v. Misleveck*, 735 F.3d 983, 988 (7th Cir. 2013)). But that was not *Gatson*'s holding. Gatson was convicted of "*knowingly* caus[ing] or creat[ing] a substantial risk of physical harm to property without the victim's consent" by "means of fire or explosion." *Id.* (quoting Ohio Rev. Code § 2909.03(A)(1) (emphasis added)). We held that the language of that Ohio statute matched the definition of generic arson. *Id. Gatson* thus stands for the very proposition that defeats Buie's argument: that knowledge is a sufficient mental state for purposes of generic arson. As Buie admits that his Tennessee arson conviction required at least knowledge, his arson conviction matches generic arson with respect to the *mens rea* requirement.

\* \* \* \* \*

To sum up, Tennessee arson comports with generic arson on both the act and *mens rea* elements, making Buie's arson conviction a violent felony under ACCA.  So are at least two of Buie's other convictions—aggravated burglary (under *Brumbach* and *Brown*) and voluntary manslaughter (by Buie's own admission).  Buie has thus been convicted of at least three violent felonies under ACCA, and therefore qualifies for ACCA's enhanced mandatory minimum sentence of 180 months—the sentence he received from the district court.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.